UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALLISON MCRAE LACY,

    Plaintiff,

v.                                                                            Case No. 3:13cv527/CJK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

## MEMORANDUM ORDER

        This case is now before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Allison McRae Lacy's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34.  The parties have consented to Magistrate Judge jurisdiction, pursuant to 28 U.S.C. § 636(c) and FEDERAL RULE OF CIVIL PROCEDURE 73, for all proceedings in this case, including entry of final judgment.  Upon review of the record before this court, I conclude that the Administrative Law Judge's ("ALJ") decision was not based upon substantial evidence.  The decision of the Commissioner, therefore, will be remanded to the ALJ for additional proceedings consistent with this order.

## ISSUES ON REVIEW

        Ms. Lacy, who will be referred to as claimant, plaintiff, or by name, raises three issues.  She claims (1) the ALJ erred in failing to find plaintiff's gastrointestinal impairments are severe; (2) the ALJ erred in failing to incorporate all of plaintiff's

impairments into the residual functional capacity finding; and (3) the ALJ erred in applying the medical vocational guidelines to find plaintiff is not disabled. (Doc. 11).

## PROCEDURAL HISTORY

On May 24, 2010, claimant completed her application for DIB, alleging disability beginning on February 26, 2010. T. 149-51.[1] The claim was denied initially on July 16, 2010. T. 99. The denial was upheld upon reconsideration. T. 105. Claimant appeared before the ALJ for a hearing on February 22, 2012. T. 33. On March 5, 2012, the ALJ issued a decision denying claimant's application for benefits. T. 19-26. The Appeals Council denied claimant's request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner. T. 1.[2]

## FINDINGS OF THE ALJ

In his written decision, the ALJ made a number of findings relevant to the issues raised in this appeal:

•      Claimant has the following severe impairments: partial tear right elbow; leg cramps; hypertension; high cholesterol. T. 21.

•      Claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a). T. 23.

•      Claimant is unable to perform any past relevant work. T. 25.

•      Claimant was born on April 26, 1963 and was 46 years old, which is

---

[1] The administrative record, as filed by the Commissioner, consists of nine volumes (docs. 9-1 through 9-9), and has 450 consecutively numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

[2] Plaintiff also filed an application for Supplemental Security Income, T. 152-159, but the denial of the application was not raised in plaintiff's complaint (doc. 1).

defined as a "younger individual, age 45-49," on the alleged disability onset date.  T. 25.

• Claimant has at least a high school education and is able to communicate in English.  T. 25.

• Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills.  T. 25.

• Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  T. 26.

• Claimant has not been under a disability, as defined in the Social Security Act, from February 26, 2010, through the date of this decision.  T. 26.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  With reference to other standards of review, the Eleventh Circuit has said that "'[s]ubstantial evidence is more than a scintilla . . . .'"  *Somogy v. Comm'r of Soc.*

*Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at 1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support." *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *See Flynn v. Heckler*, 768 F.2d. 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[3]

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[3] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work, "but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.[4]

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not

---

[4] Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

disabled.

## FACT BACKGROUND AND MEDICAL HISTORY[5]

At the ALJ hearing held on February 22, 2012, claimant provided information as to her condition. She has previous work experience as a cook in a public school system, department manager in a retail store, newspaper contractor, phone solicitor, and sandwich maker at Subway. T. 44-46. She can drive when necessary and is able to bathe, dress, and groom herself. T. 47-48. She can shop for groceries, but has difficulty lifting and carrying heavier items such as a gallon of milk. T. 48. She lives with her parents; she performs chores for them and two aunts who live nearby. T. 49-50. She prepares simple meals, cleans, washes laundry, and feeds pets. T. 49-51. Pain in both her elbows prevents her from performing these activities for more than fifteen minutes at a time. T. 52. She requires an hour of rest before she can resume. T. 52-53. For pain relief, she takes Ibuprofen, but the Ibuprofen causes stomach pain. T. 52.

Plaintiff sought emergency care for her gastrointestinal issues on three occasions. On August 25, 2008, plaintiff visited the emergency room for abdominal pain, nausea, and vomiting. T. 283. Evidence of ketoacidosis and a markedly elevated blood sugar were found. T. 283. Plaintiff was placed in intensive care and received intravenous hydration and an insulin drip. T. 282. An esophagogastroduodenoscopy ("EGD") performed to investigate abdominal pain and persistent indigestion revealed "severe erosive esophagitis." T. 283. Plaintiff was

---

[5] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record. Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

discharged on August 29, 2008, with diagnoses of new-onset type 1 diabetes, severe esophagitis, chronic alcohol abuse, diabetic ketoacidosis (resolved). T. 283. Hospital staff instructed her on how to regulate her blood sugar levels. T. 283.

On March 29, 2011, plaintiff visited the emergency room again after experiencing severe abdominal pain for multiple days. T. 434. A CT scan of the abdomen revealed a slightly enlarged pancreatic head with associated calcifications. T. 446. The doctor suspected chronic calcific pancreatitis. T. 446. Claimant was treated with Dilaudid, Zofran, and an IV, then discharged. T. 428, 435, 439.

Plaintiff visited the emergency room a third time on September 24, 2011, with abdominal pain, nausea, vomiting, and diarrhea. T. 351-358. She was not eating and had aching pain in her stomach that persisted for several weeks and rated a 10/10 in severity. T. 352. She was actively vomiting on arrival. T. 352. Claimant was treated intravenously with fluids and insulin in the intensive care unit. T. 366. An EGD was performed after plaintiff threw up "some dark brown clots." T. 366. A CT scan of the abdomen and pelvis showed "extensive thickening of the lower esophagus" and "chronic pancreatitis along with some issues of acute inflammation." T. 365, 369. Claimant was discharged on September 29, 2011, with diagnoses of acute pancreatitis, diabetic ketoacidosis, hematemesis secondary to severe erosive esophagitis, hypertension, diabetes type I, and megaloblastic anemia. T. 365.

David J. Flesher, M.D., treated claimant in September 2007 for elbow pain. T. 254. Dr. Flesher diagnosed right elbow lateral epicondylitis, commonly known as "tennis elbow." T. 254. Treatment initially consisted of cortisone injections and prescriptions of Tramadol, Darvocet, and Ibuprofen for pain relief. T. 253-258. When cortisone injections failed to provide lasting relief, Dr. Flesher recommended

surgery. T. 258. On November 20, 2007, Dr. Flesher performed a procedure described as a common extensor release with fasciotomy on claimant's right elbow. T. 252. The surgery was free of complications. T. 259. Plaintiff spent the next several months recovering. T. 261, 263, 265, 267. On March 28, 2008, Dr. Flesher opined claimant had reached maximum medical improvement. T. 269. Dr. Flesher noted "some tenderness" and pain when lifting heavy objects. Claimant had full range of motion and 4/5 strength. T. 269. Permanent work restrictions included lift/carry and push/pull limits of 20 pounds, and limited repetitive use of the right hand and wrist. T. 269. Claimant's permanent impairment rating for her right arm was 5%. T. 271.

From 2009 to 2011, Ms. Lacy sought treatment for both gastrointestinal and arm issues at the Escambia Community Clinic ("Clinic"). On October 7, 2009, claimant reported mild to moderate esophageal reflux. T. 318. Records show severe pain in both elbows and the wrist on March 11, 2010. T. 323. The nurse noted "[s]he is in tears today with the pain that she states is just constant," T. 323, and "she is now dropping things." T. 324. Plaintiff received Lidoderm patches and Darvocet to treat her pain. T. 324. A March 25, 2010 MRI of the right elbow revealed "no evidence for acute fracture or dislocation" and "minimal elbow effusion." T. 310. The MRI suggested a partial ligament tear. T. 310. In May 2010, claimant complained of severe joint pain and mild to moderate esophageal reflux. T. 326. The joint pain was treated with Tramadol. T. 327.

Ms. Lacy returned to the Clinic on July 13, 2010, describing her elbow pain as moderate but constant. T. 330. A physical exam found swelling in the right elbow and both wrists. T. 331. Plaintiff had full range of motion but arm and wrist

movements were painful. T. 331. Claimant was instructed to wear elbow braces on each arm; Tramadol and Ibuprofen were provided to manage pain. T. 331. Similar complaints of pain were made on August 6, 2010. T. 332. Plaintiff was prescribed Darvocet in addition to the Tramadol and Ibuprofen. T. 333. In September 2010 claimant complained of severe pain in both arms. T. 425. A physical examination revealed full range of motion in both arms but pain with movement. T. 426. Plaintiff received Lidoderm patches for pain. T. 426.

On November 5, 2010, plaintiff visited the Clinic with abdominal pain, nausea, and vomiting similar to previous episodes of pancreatitis; clinic staff advised claimant to visit the hospital for these episodes. T. 422-423. She also reported mild to moderate esophageal reflux and severe joint pain. T. 422. Her joint pain was treated with Darvocet, Ibuprofen, and Tramadol, and the pancreatitis symptoms with Promethazine HCL. T. 424. On February 9, 2011, plaintiff experienced another episode of abdominal pain with nausea and vomiting. T. 418. Plaintiff underwent testing for her esophageal reflux and was given a wrist splint to wear. T. 420.

On May 6, 2011, plaintiff returned to the Clinic for treatment of esophageal reflux and pancreatitis. T. 416. Symptoms continued to include nausea, vomiting, and pain. T. 416. Promethazine HCL and Lortab were provided to treat claimant's pancreatitis symptoms. T. 417. At a follow-up visit for her esophageal reflux, plaintiff reported her nausea and vomiting were resolved. T. 411. Her joint pain was treated with Tramadol and Ibuprofen. T. 412. On August 5, 2011, plaintiff's abdominal pain and vomiting reappeared. T. 405-406. Claimant received Promethazine HCL to treat nausea and vomiting and an abdominal ultrasound was ordered. T. 407.

On September 30, 2011, claimant received Prilosec to treat her esophageal reflux and tests were ordered to evaluate her pancreatitis. T. 401-402. Abdominal pain, nausea, and vomiting were reported again on October 7, 2011; claimant was also having trouble sleeping. T. 398-399. Plaintiff received Percocet to treat the associated pain and was referred to a gastroenterologist. T. 398-399. On November 4, 2011, plaintiff presented to the Clinic with mild to moderate esophageal reflux. T. 388. Abdominal pain was present but improving. T. 389.

Dr. Michael Kasabian performed a physical consultative examination of claimant on July 8, 2010 and reported the following. T. 311-316. Claimant's "right elbow and left lateral epicondyle [were] tender." T. 312. Her right shoulder and right wrist were tender with range of motion testing. T. 312. Muscle strength appeared to be 5/5 in all four extremities. T. 312. Her fine grip dexterity was normal and she was able to hold fine objects without any difficulty in both hands. T. 312.

On September 16, 2010, Dr. Clarence Louis completed a physical functional capacity assessment for the Social Security Administration. T. 342-349. Based on a review of claimant's medical records, Dr. Louis opined claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently. T. 343. She could stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday. T. 343. Claimant had no restrictions on her ability to push and/or pull (including operation of hand and/or foot controls) other than the restrictions indicated for lift and/or carry. T. 343. Plaintiff had limited ability to reach in all directions (including overhead) due to pain but did not have any limitations involving handling (gross manipulation, fingering (fine manipulation), and feeling (skin receptors). T. 345.

After the ALJ's decision was rendered, plaintiff submitted a physical residual functional capacity assessment completed by George Smith, M.D., (doc. 11-1), a doctor at the Escambia Community Clinic, T. 326. The Appeals Council noted the June 21, 2013 assessment post-dated the ALJ's decision and concluded it did not affect the determination of whether claimant was disabled on or before March 5, 2012. T. 2.[6] Dr. Smith's assessment asserted the following. Plaintiff could tolerate four to six hours of walking, standing, or sitting in an eight-hour workday. (Doc. 11-1, p.1). Claimant was limited in fine/gross manipulation and could carry up to 10 pounds only occasionally. (*Id.*). Ms. Lacy "has difficulty using her arms due to bilat[eral] injuries in her forearms[,]" and "she has trouble with fine motor use of her hands[.]" (*Id.*, p. 2). "[W]hen she has episodes of abdominal pain, [she] doesn't tolerate heat or cold." (*Id.*). Claimant required fifteen minutes of rest every four hours and would miss more than four days of work each month. (*Id.*). Plaintiff was disabled from full-time continuous employment and her condition was expected to last twelve months or longer. (*Id.*).

## ANALYSIS

Plaintiff contends the ALJ erred by (1) failing to find plaintiff's gastrointestinal impairments were severe; (2) failing to incorporate all of plaintiff's impairments into the residual functional capacity finding; and (3) applying the medical vocational guidelines to find plaintiff was not disabled. (Doc. 11). After careful review of the record, the undersigned concludes the ALJ's determination that claimant's

---

[6]The court can consider this assessment in determining whether the ALJ's decision is supported by substantial evidence. *See Ingram v. Comm'r Social Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous.").

gastrointestinal issues are a nonsevere impairment is not supported by substantial evidence. That finding, therefore, will be reversed, and the ALJ is directed to formulate plaintiff's residual functional capacity anew, considering plaintiff's gastrointestinal issues as a severe impairment. After reformulating claimant's residual functional capacity, the ALJ must determine whether exclusive reliance on the medical vocational guidelines is appropriate, or whether consultation with a vocational expert is necessary.

Severe Impairment

Plaintiff claims the ALJ erred by failing to find plaintiff's gastrointestinal issues a severe impairment. (Doc. 11, p. 8-9). The step two severity determination is a threshold inquiry used to screen out "trivial" claims, meaning an impairment is not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also Bowen v. Yuckert*, 482 U.S. 137, 145 n.5 (1987); *Stratton v. Bowen*, 827 F.2d 1447, 1453 (11th Cir. 1987); *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). "Claimant need show only that her impairment is not so slight and its effect is not so minimal." *McDaniel*, 800 F.2d at 1031. Emphasizing the threshold nature of the step two finding, the *McDaniel* court observed that the proper standard "allows only claims based upon the most trivial impairments to be rejected." *See id.* Accordingly, "severe impairment" is a "*de minimis* requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working." *Stratton*, 827 F.2d at 1452 n.9 (*quoting Baeder v. Heckler*, 768 F.2d 547, 551 (3d Cir. 1985)). Step two

requires only that the ALJ find at least one severe impairment to proceed to the next evaluative step. *See* 20 C.F.R. § 404.1520(a)(4)(ii). An error as to whether an impairment qualifies as severe, therefore, can be harmless. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."). On the other hand, an erroneous finding as to "severe" impairments at step two may improperly foreclose a claimant's "ability to demonstrate the merits of her claim for disability with respect to her former work activities." *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985).

Although stomach problems were not alleged on the disability application, the ALJ, "based on the evidentiary record as well as the claimant's testimony," considered the stomach issues for purposes of the decision. T. 22. The ALJ discussed plaintiff's three hospitalizations for abdominal pain and noted she testified that medication exacerbated her stomach pain. T. 22. The ALJ did not explicitly indicate why plaintiff's gastrointestinal issues were not severe, but, implicitly, must have concluded the impairment was "so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work[.]" *McDaniel*, 800 F.2d at 1031.

The determination that claimant's stomach issues are not a severe impairment is not supported by substantial evidence. Claimant has been diagnosed with esophagitis and pancreatitis. T. 283, 365, 369, 446. She has visited the emergency room on three separate occasions for abdominal pain accompanied by nausea and vomiting, including twice in 2011. T. 282-308, 350-383, 428-450. Two of the visits lasted multiple days and involved treatment in the intensive care unit. Clinic records

from 2010 and 2011 also evidence ongoing stomach pain with associated nausea and vomiting. *See e.g.*, 401-403, 405-407, 411-413, 416-424. Plaintiff has received Lortab, Percocet, and Tramadol to treat her abdominal pain and Promethazine to treat her nausea and vomiting. She is reluctant to take Ibuprofen to treat her elbow pain because it exacerbates her stomach problems. T. 57. Even if episodic, an impairment that produces lengthy hospitalizations and results in pain, nausea, and vomiting cannot be considered nonsevere. The court, therefore, concludes the ALJ erred by finding claimant's gastrointestinal issues were a nonsevere impairment. Considering the ALJ made only a passing reference to claimant's stomach issues in the formulation of residual functional capacity, the ALJ did not adequately consider the breadth of claimant's severe impairments. The error is not harmless. This is so because impairments must be evaluated in combination at all stages of the analysis. *See Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990); 20 C.F.R. § 404.1523.

<u>Residual Functional Capacity</u>

Next, claimant contends the ALJ erred by failing to incorporate all of plaintiff's impairments into the residual functional capacity ("RFC") finding. (Doc. 11, p. 9-11). Specifically, claimant asserts the ALJ "failed to include restrictions or limitations stemming from [p]laintiff's gastrointestinal problems." (*Id.*, p. 10). She also claims the RFC failed to incorporate claimant's inability to perform work requiring repetitive use of her right hand or wrist. (*Id.*).

The ALJ determined "claimant has the residual functional capacity to perform the full range of sedentary work[.]" T. 23. In formulating claimant's RFC, the ALJ

focused on claimant's right elbow impairment. T. 24. The ALJ noted "claimant testified she is still unable to use her right hand fully, and reports sharp pain after 15 minutes of use, with chronic pain that runs from the wrist to the thumb." T. 24. Limitations related to claimant's use of her right hand and wrist were rejected on the basis of claimant's activities of daily living and Dr. Kasabian's examination, which "revealed the claimant had normal fine grip dexterity, and was able to hold fine objects without any difficulty in both hands." T. 24. The ALJ noted Ms. Lacy could drive a car when necessary, groom herself, prepare meals, care for her elderly aunts, put away laundry, wash dishes, and care for pet cats. T. 23. The ALJ found claimant's pain improved after taking Ibuprofen and BC powder and "she acknowledged she can reach overhead with the right arm, but cannot use it for repetitive type movement." T. 24. Claimant's statements concerning the severity of her symptoms were deemed "not credible to the extent they are inconsistent with the above residual functional capacity assessment." T. 25.

As for opinion evidence, the ALJ gave "significant weight" to Dr. Kasabian's opinion and "some weight" to Dr. Flesher "regarding his treatment notes that showed the claimant had continued improvement after undergoing right elbow surgery." T. 25. "[T]he practitioners at Escambia Community Clinics" were given "little weight" because the "claimant's treatment and medical progress [were] primarily monitored by practitioners who are not acceptable medical sources." T. 25.

The ALJ's determination of claimant's RFC does not contain significant discussion of claimant's gastrointestinal issues, except to note the Clinic records from November 4, 2011, indicated "that while the claimant still had some problems with abdominal pain; . . . it was improving." T. 24. Although not specifically in reference

to claimant's stomach impairment, the ALJ did state that, "in considering all of the claimant's impairments, the conclusion is that no acceptable medical source, which have treated the claimant, examined her or her records, have opined that residuals from any of the alleged (or reported) impairments prevents her ability to perform sustained work activity. T. 24-25. The ALJ concluded "the above residual functional capacity assessment is supported by the significant lack of any ongoing treatment, the lack of prescribed medications currently being used; the lack of ongoing clinical signs or reported symptoms; the claimant's activities of daily living; and the medical opinions of Dr. Flesher and Dr. Kasabian." T. 25.

The ALJ presumably determined the symptoms from claimant's gastrointestinal issues did not effect her ability to work for the general reasons indicated above, i.e. lack of ongoing treatment, lack of prescribed medication being used, lack of ongoing clinical signs or reported symptoms, and Ms. Lacy's activities of daily living. Examination of these factors in the context of claimant's gastrointestinal impairment, however, does not necessarily lead to the conclusion that claimant's stomach pain, nausea, and vomiting would have no effect on claimant's residual functional capacity.

Plaintiff suffers from esophagitis and pancreatitis. T. 283, 365, 369, 446. Tests such as CT scans and EGDs have confirmed the existence of these conditions. Although no acceptable medical source has opined claimant's gastrointestinal issues are disabling, the medical record indicates claimant's symptoms are fairly serious. As discussed previously, plaintiff visited the emergency room on three occasions for stomach pain, nausea, and vomiting. She also reported these symptoms to the Clinic and received medication to treat them. Though claimant's November 4, 2011, Clinic visit indicated her abdominal pain was improving, the medical record as a whole

suggests plaintiff's stomach pain, nausea, and vomiting occurred in episodes. For instance, on May 13, 2011 claimant reported that her nausea and vomiting were resolved. T. 411. On August 5, 2011, however, plaintiff indicated she was "feeling worse now" and was experiencing abdominal pain and vomiting. T. 405-406. The next month, September, she visited the emergency room for abdominal pain, nausea, and vomiting, and was hospitalized for five days. T. 351-358. During this visit, claimant told staff she has had this type of abdominal pain "at least once a month" since March 2011 "but typically . . . it goes away." T. 371. Finally, plaintiff's activities of daily living do not necessarily undermine the alleged severity of her stomach issues because her stomach problems occur intermittently. In sum, it appears the ALJ simply failed to consider the impact plaintiff's gastrointestinal issues– which now must be viewed as a severe impairment– would have on her RFC. On remand, the ALJ must consider the effect claimant's gastrointestinal issues would have on residual functional capacity.

Plaintiff also asserts the ALJ erred by failing to include Dr. Flesher's permanent work restriction in the formulation of the RFC. (Doc. 11, p. 10-11). Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241. The ALJ did not discuss the portion of Dr. Flesher's opinion indicating plaintiff was permanently restricted from repetitive

use of the right hand and wrist. The Commissioner argues the ALJ's rejection of the restriction was appropriate because Dr. Flesher offered his opinion in 2008 and plaintiff's condition subsequently improved. (Doc. 14, p. 10-11). On remand, the ALJ must articulate the reasons Dr. Flesher's opinion concerning plaintiff's permanent work restriction was rejected. *See Phillips*, 357 F.3d at 1241 ("When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons.").[7]

Medical Vocational Guidelines

Finally, plaintiff alleges the ALJ erred by applying the medical vocational guidelines ("grids") to find plaintiff was not disabled. (Doc. 11, p. 11-13). An ALJ may use the grids to aid in determining "whether [a] claimant has the ability to adjust to other [jobs] in the national economy." *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40. The grids are:

> a series of matrices which correlate a set of variables-the claimant's residual functional capacity ( i.e., the ability, despite impairments, to do sedentary, light, etc. work), age, educational background, and previous work experience. Upon the entry of a set of these variables into the appropriate matrix a finding of disabled or not disabled is rendered.

*Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir.1985) (per curiam). "In appropriate circumstances, the grids may be used" instead of the testimony of a vocational expert to establish whether such work exists and, in turn, whether the claimant is "disabled." *Allen v. Sullivan*, 880 F.2d 1200, 1201-02 (11th Cir.1989). However,

---

[7] The undersigned notes the ALJ omitted any discussion of Dr. Clarence Louis' opinion. Although Dr. Louis is a reviewing, non-examining physician, he did opine plaintiff had limited ability to reach in all directions (including overhead). T. 345.

> [w]hen the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit basic work skills, exclusive reliance on the grids is inappropriate. In such cases, the [ALJ]'s preferred method of demonstrating that the claimant can perform other jobs is through testimony of a VE.

*Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.1999) (citations omitted). Reliance on the grids is proper where substantial evidence supports the ALJ's determination that the claimant's non-exertional impairments did not significantly limit ability to perform specified types of work. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir.1985). According to the Social Security regulations,

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Here, the ALJ found that "claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a)." T. 23. The ALJ found claimant was unable to perform any of her past relevant work because her previous work as a newspaper carrier is categorized at the light exertional level, beyond claimants RFC of sedentary. T. 25. The ALJ found that application of "the Medical-Vocational Rules directly supports a finding of 'not disabled,' whether or not the claimant has transferable job skills." T. 25.

Plaintiff contends the ALJ's reliance on the grids was inappropriate because the ALJ failed to consider whether plaintiff's manipulative limitations–her inability to perform work that requires the repetitive use of her right hand or

wrist–significantly erode the full range of work at the sedentary level. (Doc. 11, p. 12). Plaintiff also contends her "gastrointestinal impairments, which cause pain and significantly limit Plaintiff's ability to perform basic work skills," make "the ALJ's exclusive reliance on the grids . . . inappropriate." (*Id.*). After reformulating claimant's RFC as instructed, the ALJ, applying the rules as set out above, must consider whether exclusive reliance on the grids is appropriate or whether consultation with a vocational expert is necessary to determine whether plaintiff is disabled.

## CONCLUSION

In sum, the ALJ's determination of claimant's residual functional capacity failed to adequately discuss the restrictions placed on claimant by Dr. Flesher and the effects of her gastrointestinal impairment. On remand, the ALJ must reformulate plaintiff's residual functional capacity while treating claimant's gastrointestinal issues as a severe impairment. Thereafter, the ALJ must determine whether reliance on the grids is appropriate or whether consultation with a vocational expert is necessary.

Accordingly, it is ORDERED:

The Commissioner's decision should be VACATED, and the matter REMANDED for further proceedings consistent with this order.

At Pensacola, Florida, this 26th day of January, 2015.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE**